(No. 5491 

ARTHUR A. BLEAU, and SOPHIE J. BLEAU, his wife, partners, d/b/a AIRWAY TRAILER PARK AND SALES, a partnership, Claimants, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed February 17, 1972.*
*Petition of Respondent for Rehearing denied August 10, 1972.*

PETERSON, LOWRY, RALL, BARBER AND ROSS, Attorney for Claimants.

WILLIAM J. SCOTT, Attorney General; ETTA COLE and SAUL R. WEXLER, Assistant Attorneys General, for Respondent.

HOLDERMAN, J.

Claimants, Arthur A. Bleau and Sophie J. Bleau, d/b/a Airway Trailer Park & Sales, a partnership, seek recovery for damages to their trailer park at Oak Lawn, Illinois.

The facts, briefly, are as follows:

On April 21, 1967, a tornado struck claimants' trailer park located at 9001 South Cicero Avenue, Oak Lawn, Illinois. This tornado caused considerable loss of life and damage to property, including a portion of the trailer park of the claimants.

The Illinois National Guard was called to the scene by

the Governor of the State of Illinois to assist the local authorities in caring for the injured, recovering the dead, and in a general cleanup operation.

The National Guard responded promptly; moved in its personnel, trucks and other machinery; carried on a search for dead and injured persons; and also was instrumental in recovering many truckloads of personal property of the inhabitants of the area.

Claimants content that, in its cleanup operation, the Illinois National Guard negligently and improperly scooped up and removed various concrete slabs on which claimants set trailers and used as walkways, as well as water and sewer pipes and other underground utilities. The concrete slabs were four inches to five inches thick and set flush with the ground. The water and other underground utilities in some instances had risers extending above ground.

Claimants' Exhibit 1, a photograph taken after the tornado struck but before cleanup operations, shows the condition of the premises with wrecked trailers, debris, and a general chaotic condition. It also shows a number of the slabs in question, which appear to be at ground level and apparently not affected by the storm.

Claimants' Exhibit No. 2 is a picture taken after the cleanup operations were completed and shows the premises very clean, with all slabs removed except those in the lower left hand corner. There is a complete absence of other slabs or walks.

Respondent contends that the National Guard was not negligent in the operation of its bulldozers and did not remove the slabs nor cause the alleged damage. Respondent infers that the private contractors, who were also engaged in bulldozing the area, were responsible for the said damages.

This case turns on a simple question of fact, namely,

whether or not the bulldozers of the National Guard did remove the concrete slabs and damage the utilities.

Twenty witnesses testified at the hearing, ten on behalf of the claimants, and ten on behalf of the respondent. While some of the claimants' witnesses were connected with the claimants in various ways, their testimony was consistent in placing the Illinois National Guard on the scene and in seeing no private contractors in the park. Respondent's witnesses testified as to various procedures in their operation including the height at which they had set their bulldozer blades.

The members of the National Guard also testified to the fact that there was equipment of private contractors operating in the area and this is borne out by the picture of the bulldozers in petitioners' Exhibit 1 which shows that one bulldozer was in the area at a time before the arrival of the Illinois National Guard.

Preponderance of the evidence indicates that the Illinois National Guard did the greater portion of the bulldozing operation at the trailer park.

That there was removal of many of the slabs on which the trailers were set is evidenced by Exhibit 2 which shows the area after the National Guard had finished their operation, and it discloses that most of the slabs were removed.

Claimants expended the sum of $35,139.02 to put their trailer park back in operation and introduced various bills, the total of which aggregated the above amount.

Some of the bills were for the replacement of concrete patios, replacement of black dirt fill, replacement of the sewage system, replacement of underground wiring, replacement of mobile home valves, piping and accessories, replacement of hardware utility connections, replacement of lumber support of underground sewers and labor costs in

repairing damages.

Claimants also made a claim for loss of rental of the trailers in the amount of $13,870.11.

The Illinois National Guard, having voluntarily undertaken to engage in a rescue and cleanup operation on the claimants' property, was under a duty to exercise ordinary care while engaged in said operation so as not to injure or destroy the claimants' property.

One of the closest cases in point is the case of the *Village of Lake Villa* vs. *State of Illinois*, Volume 22, Court of Claim Reports, Page 4. In this case the State hired a private contractor to use a bulldozer in cleaning the highways. The bulldozer, being used for a snow removal job, struck and broke a fire hydrant of the Village. The State was held responsible by reason of the negligent operation causing the damage.

Applying the same rules to this case, it is apparent that the National Guard was negligent in certain acts which caused some of the alleged damage.

In the case of *Walter N. Clark* vs. *State of Illinois*, 22 C.C.R. 173, where the damage was caused by an Illinois National Guard vehicle, which was not being properly operated, and there being no contributory negligence on the part of the claimant, the State was held liable.

The Reports are replete with cases holding that the negligence of the Illinois National Guard in the operation of its vehicles and equipment, where there was no contributory negligence on the part of the claimant, results in an award to the claimant.

With respect to the amount of loss suffered by the claimants for the alleged loss of rental for the trailers, we cannot agree with the position of the claimants. The damage resulting in the destruction of the trailers was that of the

tornado and not of the Illinois National Guard. Regardless of any acts of the Illinois National Guard, this damage had already occurred before their arrival, and new trailers would have had to be erected before any rentals could accrue.

If there were any delay in the reconstruction and replacement of these trailers caused by any acts of the National Guard, we believe it was more than off-set by the cost of the cleanup operation performed gratuitously by the Illinois National Guard. Therefore, any claim for loss of rentals is hereby denied.

We believe that the claimants have proved by a preponderance of the evidence submitted that they sustained damages in the amount of $15,000.00.

We, therefore, make an award to the claimants in the amount of $15,000.00.